**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ADOLFO GARCIA, LIDIA** | § | |
| **GARCIA, LARISSA GARCIA,** | § | |
| **DIVANNE GARCIA, and LACEY** | § | |
| **GARCIA,** | § | |
| *Plaintiffs*, | § | **CIVIL ACTION 5:18-cv-505** |
| | § | |
| **V.** | § | |
| | § | |
| | § | |
| **THE CITY OF SAN ANTONIO;** | § | |
| **WILLIAM MCMANUS,** | § | |
| **Individually and as CHIEF OF** | § | |
| **THE SAN ANTONIO POLICE** | § | |
| **DEPARTMENT; OFFICER** | § | |
| **ANASTACIO HERNANDEZ,** | § | |
| **Employee # 3061, Individually;** | § | |
| **OFFICER MARIO MORENO,** | § | |
| **Employee #0362, Individually,** | § | |
| *Defendants*. | § | |

**<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Now comes ADOLFO GARCIA, LIDIA GARCIA, LARISSA GARCIA, DIVANNE GARCIA, and LACEY GARCIA, hereinafter referred to as Plaintiffs, by an through their undersigned attorney of record, in accordance with the Civil Rights Act, the Federal Rules of Civil Procedure, and the Texas Torts Claims Act, file this, their Original Complaint, against the **CITY OF SAN ANTONIO**; **CHIEF WILLIAM P. MCMANUS**; Individually and as **CHIEF OF THE SAN ANTONIO POLICE DEPARTMENT**; **OFFICER ANASTACIO HERNANDEZ**, Employee #3061, Individually; **OFFICER MARIO MORENO**, Employee #0362, Individually; hereinafter referred to as Defendants.

1

In support of this cause of action, Plaintiffs would respectfully show unto the Court the following:

**I.**
**PARTIES**

1.      Plaintiff **ADOLFO GARCIA** is an individual residing in Bexar County, Texas, and is the biological father of **DONOVAN GARCIA**, deceased. Plaintiff **LIDIA GARCIA** is an individual residing in Bexar County, Texas, and is the biological mother of **DONOVAN GARCIA**, deceased. Plaintiffs **LARISSA GARCIA, DEVANNE GARCIA**, and **LACEY GARCIA** are individuals residing in Bexar County, Texas, and are the biological children of **DONOVAN GARCIA**, deceased.

2.      Defendant **CITY OF SAN ANTONIO** is a municipal government entity within the State of Texas and the public employer of **CHIEF WILLIAM P. MCMANUS, CHIEF OF THE SAN ANTONIO POLICE DEPARTMENT, OFFICER ANASTACIO HERNANDEZ,** and **OFFICER MARIO MORENO**. The City of San Antonio may be served with process by serving the Mayor of the City of San Antonio, Mr. Ron Nirenberg; the City Manager of the City of San Antonio, Ms. Sheryl Sculley; the City Attorney of the City of San Antonio, Mr. Andrew Segovia; or the City Clerk of the City of San Antonio, Ms. Leticia M. Vacek, at 100 Military Plaza, San Antonio, Texas, 78205, or anywhere they may be found.

3.      Defendant **CHIEF WILLIAM P. MCMANUS**, Individually and as **CHIEF OF THE SAN ANTONIO POLICE DEPARTMENT** (hereinafter referred to as "**DEFENDANT CHIEF MCMANUS**"), at all times relevant, was a resident of the State of Texas, and was an employee for the San Antonio Police Department. He can be served with process at the San Antonio Police Department, 315 S. Santa Rosa Ave, San Antonio, Texas 78207, or anywhere he may be found.

2

4.      Defendant **OFFICER ANASTACIO HERNANDEZ**, Employee #3061, Individually (hereinafter referred to as "**DEFENDANT HERNANDEZ**"), is an individual and, at the time of the incident, was a duly appointed and acting officer of the Police Department of the **CITY OF SAN ANTONIO**, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the **CITY OF SAN ANTONIO**. He can be served with process at the San Antonio Police Department, 315 S. Santa Rosa Ave, San Antonio, Texas 78207, or anywhere he may be found.

5.      Defendant **OFFICER MARIO MORENO**, Employee #0362, Individually (hereinafter referred to as "**DEFENDANT MORENO**"), is an individual and, at the time of the incident, was a duly appointed and acting officer of the Police Department of the **CITY OF SAN ANTONIO**, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the **CITY OF SAN ANTONIO**. He can be served with process at the San Antonio Police Department, 315 S. Santa Rosa Ave, San Antonio, Texas 78207, or anywhere he may be found.

## II.
## VENUE AND JURISDICTION

6.      Plaintiffs assert their claims against Defendants for violation of **DONOVAN GARCIA**'s Fourth Amendment Rights against unreasonable search and seizure and to be free from excessive use of force, which is incorporated upon the States through the Fourteenth Amendment. This Court has jurisdiction of this action pursuant to 28 U.S.C § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims that are set forth below.

7.     Because Defendants' actions, inactions, and failures to comply with the Civil Rights Act all occurred or failed to occur in San Antonio, Bexar County, Texas, venue in the San Antonio Division of the Western District of Texas under 29 U.S.C. § 1391(b) is appropriate.

## III.
## STATEMENT OF FACTS

8.     On the night of May 26, 2016, members of the San Antonio Police Department Repeat Offenders Program Unit (ROP) were surveilling the deceased, DONOVAN GARCIA (GARCIA), at the Economy Inn of San Antonio, 2434 S.W. Loop 410, San Antonio, Texas 78227, hereinafter referred to as the "hotel."

9.     While conducting surveillance, shots were fired on the hotel premises, in a matter not related to GARCIA or the ROP officers conducting surveillance. As a result of their proximity to the shooting, ROP officers responded. In addition, several other officers responded to the scene, including DEFENDANTS HERNANDEZ and MORENO. The individuals involved in the shooting were apprehended and the ROP officers continued on with their surveillance of GARCIA.

10.    After the shooting incident, GARCIA was spotted leaving his room and ROP officers directed DEFENDANT MORENO to make contact and obtain positive identification. DEFENDANT MORENO approached GARCIA and identified GARCIA from a photo shown by ROP officers. GARCIA identified himself, and DEFENDANT MORENO informed GARCIA that he was wanted and that he would be arrested, and a struggle ensued.

11.    Either five or six able bodied SAPD officers – the exact number varies by report – descended on GARCIA including DEFENDANTS HERNANDEZ and MORENO, controlling all parts of his body. DEFENDANT MORENO tased GARCIA several times using his service Taser. The five or six officers continued to restrain GARCIA.

4

12.     DEFENDANT HERNANDEZ was directed to grab GARCIA's elbow. At this point, at least 4 officers report to have a hold of one of GARCIA's appendages. DEFENDANT HERNADEZ states that he had a hold of both elbows, UNIDENTIFIED Officer 1 had GARCIA in a headlock, UNIDENTIFIED Officer 2 had a hold of one of GARCIA's arms, and DEFENDANT MORENO had a hold on GARCIA's other arm. [1]

13.     The following accounts of events are drastically in conflict. UNIDENTIFIED Officer 1 states that GARCIA attempted to run away and the group fell to the ground in between two vehicles. Other accounts state that the group was rolling around on the ground.

14.     UNIDENTIFIED Officer 1 stated that GARCIA ripped the officer's firearm off his belt while still contained in the holster. Other accounts confirm that the holster was broken off the belt. DEFENDANT MORENO states that GARCIA pulled the gun and was waiving it and pointing it at several officers. DEFENDANT MORENO makes no reference to the firearm being in the holster, and instead states that he "was staring down the barrel of the gun."  DEFENDANT HERNANDEZ only hears somebody say that "he's going for my gun" and "he's got my gun."

15.     DEFENDANT MORENO, despite "staring down the barrel of the gun," spends several seconds trying to find a way to shoot GARCIA. He thoughtfully tries to "take a shot" but cannot get a good line of site. Finally he resorts pushing a fellow officer out of the way so he can shoot GARCIA on the left side of his torso.

16.     DEFENDANT HERNANDEZ, although claiming to be right on GARCIA and the other officers, makes no statement regarding seeing GARCIA with a firearm in his hands.

---

[1] UNIDENTIFIED Officers 1 and 2 authored reports received from the City of San Antonio pursuant to an Open Records Request. Several identities were redacted from the release records. UNIDENTIFIED Officers were referenced in other reports received from which the facts were

DEFENDANT HERNANDEZ reacts to the other officers claiming GARCIA has a gun by taking two steps back, drawing his service pistol, and firing two shots into GARCIA's torso.

17.     DEFENDENTS HERNANDEZ and MORENO were the only two officers present to respond to the physically restrained GARCIA with deadly force. The remaining three or four officers continued to restrain GARCIA.

18.     UNIDENTIFIED Officer 2 had a hold of GARCIA's left arm when GARCIA supposedly had control of UNIDENTIFIED Officer 1's firearm. UNIDENTIFIED Officer 2 did not see GARCIA with the officer's firearm and let go of GARCIA to try to get a shot on GARCIA that would not also hit officers nearby. UNIDENTIFIED Officer 2 runs around one of the nearby cars to get a shot when the other officers shoot GARCIA.

19.     UNIDENTIFIED Officer 1's gun – the gun supposedly in GARCIA's control at the time he was shot –  was taken into custody and fingerprinted. "No Latent Prints" were discovered on the firearm.

20.     MICHAEL TREVINO, a disinterest bystander, witnessed the altercation and shooting. in two separate interviews with SAPD officers, TREVINO states that GARCIA was not a threat to "five officers." Although TREVINO heard officers state that "he's got my gun," TREVINO saw GARCIA's hands when GARCIA was shot and GARCIA's hands were empty.

### IV.
### PLAINTIFFS' CIVIL RIGHTS CLAIM

21.     The Civil Rights Acts, as codified at 42 U.S.C. § 1983, provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

### (A)   PLAINTIFFS' FIRST CLAIM:
### EXCESSIVE FORCE – PEACE OFFICER LIABILITY

22.    Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

23.    Plaintiffs bring a claim against **DEFENDANT HERNANDEZ** and **DEFENDANT MORENO** individually, pursuant to 42 U.S.C. § 1983.

24.    The force used by **DEFENDANT HERNANDEZ** and excessive, and therefore violates the Fourth Amendment of the United States Constitution, which prohibit unreasonable searches and seizures.

25.    The force used by **DEFENDANT MORENO** and excessive, and therefore violates the Fourth Amendment of the United States Constitution, which prohibit unreasonable searches and seizures.

26.    At all times relevant, **DEFENDANT HERNANDEZ** had actual awareness that **DONOVAN GARCIA** had constitutional protection against unreasonable search and seizure. Despite having actual awareness of these protections, **DEFENDANT HERNANDEZ** violated the constitutional rights of **DONOVAN GARCIA** and caused wrongful death.

27.    At all times relevant, **DEFENDANT MORENO** had actual awareness that **DONOVAN GARCIA** had constitutional protection against unreasonable search and seizure. Despite having actual awareness of these protections, **DEFENDANT MORENO** violated the constitutional rights of **DONOVAN GARCIA** and caused wrongful death.

28.    The actions of the two **DEFENDANTS** clearly demonstrates a complete and total failure to train by **DEFENDANT CHIEF MCMANUS**. As Chief Law Enforcement Officer, **DEFENDANT CHIEF ACEVEDO** had a duty to ensure that officers in the San Antonio Police Department were adequately trained in dealing with combative and resistant suspects. The actions

taken by the San Antonio Police Department demonstrate a complete disregard for **DONOVAN GARCIA's** Fourth Amendment Rights.

## (B)   PLAINTIFFS' SECOND CLAIM:
## INADEQUATE TRAINING – CITY OF SAN ANTONIO LIABILITY

29.     The **DEFENDANT CITY OF SAN ANTONIO** and the San Antonio Police Department are liable under 42 U.S.C. § 1983 for failing to train their law enforcement officers. Moreover, the City of San Antonio had the following policies and/or practices in effect prior to the shooting:

a.     Inadequate supervision of officers regarding their use of force;

b.     Employing excessive force against minorities;

c.     Employing deadly force disproportionately against minorities;

d.     Inadequate warning systems to discipline and/or weed out potentially dangerous officers;

e.     Failing to adequately investigate use of force by SAPD officers; and

f.     Inadequate training.

30.     The City of San Antonio's policies and practices were the moving force of **DONOVAN GARCIA's** death and caused **DONOVAN GARCIA** to be deprived of his constitutional rights to be free from unlawful seizures.

## V.
## TEXAS TORTS CLAIM – WRONGFUL DEATH

31.     Plaintiff adopt by reference the statements made in paragraphs 1-29.

32.     In the alternative, and Pursuant to Texas Civil Practices and Remedies Code § 101.0215, Plaintiffs bring this wrongful death action based on the wrongful, negligent, and reckless

actions and omissions of **DEFENDANT HERNANDEZ** and **DEFENDANT MORENO** which proximately caused **DONAVAN GARCIA's** death.

33.     Pursuant to Texas Civil Practices and Remedies Code § 101.215, the City cannot avail itself of immunity and is liable to Plaintiffs for **DONAVAN GARCIA's** death. **DEFENDANT HERNANDEZ** and **DEFENDANT MORENO** were police officers who discharged their service pistols while acting in the course and scope of their employment with the **CITY OF SAN ANTONIO POLICE DEPARTMENT** vis-à-vis the **CITY OF SAN ANTONIO**. Further, the actions of **DEFENDANT HERNANDEZ** and **DEFENDANT MORENO** were taken with conscious indifference and reckless disregard for the safety of others. No reasonably prudent officer with regard for the safety of others and when faced with identical circumstances would have acted in the same manner as **DEFENDANT HERNANDEZ** and **DEFENDANT MORENO**.

## VI.
## SUPERVISORY LIABILITY – DEFENDANT WILLIAM MCMANUS, CHIEF OF SAN ANTONIO POLICE DEPARTMENT

34.     As Chief Law Enforcement Officer and the individual in charge of policy decisions for the San Antonio Police Department, **DEFENDANT CHIEF MCMANUS** had the duty to ensure officers like **DEFENDANT HERNANDEZ** and **DEFENDANT MORENO** received proper use of force training. Law enforcement officers should use only the amount of force necessary to mitigate an incident, make an arrest, or protect themselves or others from harm. The levels, or continuum, of force police use include basic verbal and physical restraint, less-lethal force, and lethal force. Force has been defined as "that amount of effort required by police to compel compliance from an unwilling subject," with excessive force being defined as, "the

application of an amount and/or frequency of force greater than that required to compel compliance from a willing or unwilling subject."[2]

## VII.
## SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION

35.     In addition to violating the rights guaranteed to **DONOVAN GARCIA** by the Fourth Amendment to the United States Constitution, the **DEFENDANTS**, acting under color of law, violated the rights guaranteed to **DONOVAN GARCIA** by the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.

## VIII.
## DAMAGES

36.     The actions and omissions of Defendants deprived **DONOVAN GARCIA** of his civil rights under the United States Constitution. Moreover, these acts and omissions by Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the wrongful death of **DONOVAN GARCIA**. Accordingly, Plaintiffs assert claims under 42 U.S.C. § 1983 and the Texas Wrongful Death and Survivorship Statutes.

## IX.
## ATTORNEY'S FEES

37.     Plaintiffs are entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976. *See* 42 U.S.C. § 1988. Plaintiffs hereby request that the Court and jury award attorney's fees and expenses.

---

[2] International Association of Chiefs of Police, *Emerging Use of Force Issues: Balancing Public and Officer Safety*, Report for the International Association of Chiefs of Police/COPS Office Use of Force Symposium (March 2012) www.theiacp.org/portals/0/pdfs/emerginguseofforceissues041612.pdf.

**X.**
**JURY DEMAND**

38.      Plaintiffs respectfully demand a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendants, be found liable, jointly and severally, for actual damages above jurisdictional minimum of the Court, exemplary damages, pre-judgment interest, post-judgment interest, costs of Court, attorney fees and expenses and all other relief to which Plaintiffs are justly entitled, at law or in equity.

Respectfully submitted,

/s/ Roy Barrera III
Roy Barrera III
State Bar No. 2028545
rbarrera@thebarrerafirm.com
David Harris
State Bar No. 24074366
dharris@thebarrerafirm.com

**THE BARRERA FIRM**
424 E. Nueva Street
San Antonio, Texas 78205
Telephone No. (210) 224-5811
Facsimile No. (210) 802-4633
**Attorneys For Plaintiffs**